UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CLIFFORD PETERS,

                           Petitioner,

      -against-

THOMAS POOLE, Superintendent,

                         Respondent.

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

03-CV-2919 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

<u>OPINION AND ORDER</u>

ROSS, United States District Judge:

On February 5, 2007, Clifford Peters ("petitioner"), appearing <u>pro se</u>, filed a petition for a writ of habeas corpus challenging his criminal conviction pursuant to 28 U.S.C. § 2254. In his petition, he claims that (1) the weight of the evidence did not support the jury verdict in his state court trial; (2) he was deprived of his due process right to a fair trial because the trial court refused to provide a requested jury instruction; and (3) he was deprived of the effective assistance of trial counsel. For the reasons stated below, the petition is denied.

## BACKGROUND

On June 16, 1998, petitioner was convicted in the Supreme Court of the State of New York, Kings County ("Kings County Supreme Court"), of Murder in the Second Degree, N.Y. Penal Law § 125.25, and Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03. <u>See</u> Aff. in Opp'n to Pet. ¶ 7. Petitioner was charged in connection with the death of Collic Dunbar, who was shot at a basketball court near 808 Park Avenue in Brooklyn on April 13, 1997, and died two weeks later. <u>Id.</u> ¶ 4. Petitioner's first trial in February 1998 ended in a mistrial after the jury was deadlocked. <u>Id.</u> ¶ 6. At petitioner's second trial, the government called nine witnesses and the defense did not call any witnesses. This court will summarize only the

testimony from the second trial that is most relevant to petitioner's claims.

Government witness Grayson Cooper testified that he was playing basketball with Dunbar on April 13, 1997, around 3 p.m. when petitioner and two others came to the park. Gov't Ex. 1, Trial Tr., June 11, 1998, at 188-92. Cooper testified that he suggested to Dunbar that they leave because he knew that Dunbar had a problem with one of petitioner's friends and because he was concerned that petitioner was wearing a jacket on a warm day and had his hand in his pocket. Id. at 193-95. Dunbar wanted to finish the game, so they stayed a few more minutes, then Dunbar said they should leave. Id. at 195. Cooper testified that as Dunbar was gathering his belongings to leave, petitioner pulled a gun out of his jacket pocket and shot Dunbar around four times before running away. Id. at 195-97. Cooper and a friend named James helped to take Dunbar across the street to the security booth at a hospital, then an ambulance came and took them to Bellevue Hospital. Id. at 199-200. Cooper testified that when police interviewed him at the hospital, he gave a description of the shooter and said the shooter's nickname was Fern but that he did not know his real name. Id. at 201-02. He testified that on May 9 he went to the police station to view a lineup and that he identified the person he knew as Fern in the lineup. Id. at 203-04. On cross-examination, Cooper admitted that he did not initially cooperate with police or give information about the shooting. Id. at 228-29, 238-39. On redirect, he stated that he and Dunbar had decided not to cooperate with police because "I was going to handle it myself," then "somebody" told him to do the right thing and cooperate. Id. at 253-54.

Police officer Thomas Caffrey, the detective who investigated Dunbar's shooting, testified that he spoke to Cooper at Bellevue Hospital, and Cooper gave a description of the shooter and said his nickname was Fern. Trial Tr., June 15, 1998, at 304-05. Caffrey testified that several weeks later he brought Cooper to the station to view a lineup including petitioner. Id. at

2

311-314. Caffrey testified that he subsequently arrested petitioner. Id. at 314.

Dr. Mark Flomenbaum, the medical examiner who performed the autopsy on Dunbar, testified that Dunbar received bullet wounds to the forearm, thighs, and hip. Trial Tr., June 11, 1998, at 121-24. One of the bullets lodged under Dunbar's chest bone and nicked the envelope surrounding the heart, causing a blood clot. Id. at 125. After surgery, Dunbar appeared to be recovering and was released, then he returned to the hospital a few days later reporting difficulty breathing. Id. at 126. The hospital readmitted Dunbar and found that he had pneumonia, likely caused by the insertion of chest tubes during his prior surgery. Id. at 127. Flomenbaum testified that Dunbar died at the hospital after the original blood clot where the bullet lodged ended up bleeding again and filling the sac around Dunbar's heart. Id. at 125-27. He stated that the cause of Dunbar's death was cardiovascular compromise from the blood clot, in combination with pulmonary compromise due to pneumonia. Id. at 127-33.

The jury acquitted petitioner of intentional second degree murder but found petitioner guilty of depraved indifference second degree murder. Trial Tr., June 17, 1998, at 525-26. The trial court sentenced petitioner to concurrent prison sentences of twenty-four years to life on the murder conviction and seven and one-half to fifteen years on the weapon possession conviction. Trial Tr., July 1, 1998, at 14-15.

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"). Through counsel, petitioner argued that (1) the weight of the evidence did not support the conviction for depraved indifference murder, and (2) he was deprived of a fair trial because the trial court refused to give a specific jury instruction regarding Cooper's eyewitness testimony. See Gov't Ex. 2, Def.'s Br. to the Appellate Div. on Def.'s Direct Appeal, at 19, 24. The Appellate Division affirmed petitioner's conviction. People v. Peters, 736

N.Y.S.2d 270 (App. Div. 2002). On March 4, 2002, the New York Court of Appeals denied

leave to appeal the Appellate Division's decision. People v. Peters, 97 N.Y.2d 759 (2002).

On May 29, 2003, petitioner, appearing pro se, filed a petition for a writ of habeas corpus

in this court pursuant to 28 U.S.C. § 2254. See Peters v. Poole, No. 03-CV-02919 (ARR), Dkt.

#1. On September 22, 2003, the district court (Trager, J.) ordered petitioner's case closed without

prejudice to allow petitioner to pursue state post-conviction proceedings. Dkt. #4. The court

stated that petitioner would have the right to re-open the case by letter request within thirty days

of the disposition of state court proceedings. Id.

On June 13, 2003, petitioner filed a pro se motion in Kings County Supreme Court to

vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10.

Gov't Ex. 4, Def.'s June 2003 Mot. to Vacate J. of Conviction. Petitioner argued that he was

deprived of the effective assistance of counsel at his second trial on two grounds. First, counsel

failed to call a witness named Rasheen Smith who had testified for the government at his first

trial and who had stated that petitioner was not the shooter. Second, counsel failed to request a

missing witness charge for James, the person whom Cooper testified had helped him carry

Dunbar to the hospital after the shooting. In an order dated October 8, 2003, the Kings County

Supreme Court denied petitioner's motion to vacate the judgment. Gov't Ex. 7. The court found

that petitioner "received meaningful representation" and that his trial counsel may have had

"strategic or other legitimate reasons" for deciding not to call Smith as a witness. Id. The court

rejected the claim regarding the missing witness charge because petitioner failed to include

sworn allegations to support the claim. Id.[1]

On January 30, 2004, the Appellate Division granted petitioner leave to appeal the Kings

---

[1] Petitioner has not raised the missing witness charge as a basis for his claim of ineffective assistance of counsel in the instant petition, so this court will not address it.

County Supreme Court's decision and appointed counsel to represent him. Gov't Ex. 8, Def.'s

Br. to the Appellate Div. Appealing Denial of Mot. to Vacate J., at 2. Petitioner's counsel argued

that the Kings County Supreme Court should have granted petitioner a hearing regarding his

ineffective assistance of counsel claim. Id. at 14-15. On April 18, 2006, the Appellate Division

affirmed the Kings County Supreme Court decision. People v. Peters, 812 N.Y.S.2d 372 (App.

Div. 2006). The Appellate Division found that the Kings County Supreme Court properly denied

the motion without a hearing because "[v]iewed objectively, the record demonstrated a

legitimate strategic reason for not calling a certain witness to testify at trial." Id. On July 21,

2006, the New York Court of Appeals denied leave to appeal the decision of the Appellate

Division. People v. Peters, 7 N.Y.3d 793 (2006). Proceeding pro se, petitioner sought leave for a

writ of certiorari to the United States Supreme Court, which was denied on January 8, 2007.

Peters v. New York, 549 U.S. 1129 (2007).

On February 5, 2007, petitioner filed the instant petition, which raised the same two

claims as his prior habeas corpus petition as well as a third claim regarding ineffective assistance

of counsel. Pet., Dkt. #10.[2]

---

[2] After filing the instant petition, on May 6, 2008, petitioner filed a second pro se motion in Kings County Supreme
Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. In his second
motion, petitioner argued that his trial counsel was ineffective because he failed to investigate potential eyewitnesses
named Terrence Slater and Lewie Smoke who would have testified that a different person shot Dunbar. Gov't Ex.
10, Def.'s May 2008 Mot. to Vacate J. of Conviction. On January 12, 2009, the Kings County Supreme Court
denied the motion, finding it procedurally barred because petitioner could have raised the issue in his prior § 440.10
motion. Gov't Ex. 12. The court also found the claim "procedurally deficient" because petitioner failed to support
his allegations with evidence. Id. Furthermore, the court stated that even if the claim were considered on the merits,
the motion would be denied because the record showed that trial counsel provided adequate representation. Id. On
June 4, 2009, the Appellate Division denied leave to appeal. Aff. in Opp'n to Pet. ¶ 25. Petitioner has not sought to
amend his habeas petition to add this new ineffective assistance of counsel claim, so this court will not consider it.

## DISCUSSION

### A. AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that

"[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a

person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-

year statute of limitations runs from the latest of the following four events:

(A)  the direct review of the petitioner's conviction is final;
(B)  an unconstitutional or illegal state-created impediment that precluded the petitioner from filing his petition was removed;
(C)  a new constitutional right was announced by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D)  the factual predicate for the petition was – or could have been – discovered by the petitioner through exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Generally, the statute of limitations runs from the date on which a petitioner's conviction

became final. 28 U.S.C. § 2244(d)(1)(A). A petitioner's conviction is considered final when

direct appellate review in the state court system is complete and either certiorari proceedings in

the United States Supreme Court are completed or, if no petition for certiorari is filed, the

expiration of the time to seek direct review via certiorari has expired. Williams v. Artuz, 237

F.3d 147, 151 (2d Cir. 2001). A properly filed motion for post-conviction review in state court

tolls the one-year statute of limitations. 28 U.S.C. § 2244(d)(2); see Pratt v. Greiner, 306 F.3d

1190, 1191 (2d Cir. 2002). The statute of limitations is tolled while the state post-conviction

motion is on appeal within the state court system, but it is not tolled during the period in which

the petitioner seeks United States Supreme Court review of the state post-conviction motion.

Lawrence v. Florida, 549 U.S. 327, 329 (2007). In addition, a habeas petitioner may be entitled

to equitable tolling of the one-year statute of limitations if he can show that "he has been

pursuing his rights diligently, and . . . some extraordinary circumstance stood in his way."

Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo,

544 U.S. 408, 418 (2005)); see also Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

In this case, the New York Court of Appeals denied petitioner's application for leave to

appeal on March 4, 2002. People v. Peters, 97 N.Y.2d 759 (2002). His conviction thus became

final when his time to file a petition for certiorari with the United States Supreme Court expired

90 days later, on June 2, 2002. Petitioner timely filed his first petition on May 29, 2003, Dkt. #1

at ECF 37, which was 361 days after the one-year statute of limitations began to run.[3] On

September 22, 2003, the court closed petitioner's case, with leave to re-open within 30 days of

the end of state post-conviction proceedings. Dkt. #4. Petitioner's state post-conviction

proceedings ended on July 21, 2006, when the New York Court of Appeals denied leave to

appeal. People v. Peters, 7 N.Y.3d 793 (2006). Petitioner did not write a letter to this court to re-

open his case until 60 days later on September 18, 2006. Dkt. #6. He stated that his counsel had

not informed him in a timely manner that the New York Court of Appeals denied leave to appeal,

and he wrote to the court as soon as he became aware that his state post-conviction proceedings

had terminated. Id. Petitioner sent letters to the court dated September 18, 2006, Dkt. #6,

September 21, 2006, Dkt. #7, October 12, 2006, Dkt. #8, and February 1, 2007, Dkt. #9, asking

how to re-open and amend his habeas petition. He filed his second amended habeas petition on

February 5, 2007. Pet., Dkt. #10, at ECF 14.

This court granted the government the opportunity to show cause as to why the statute of

limitations should not be equitably tolled. Dkt. #15. The government stated that it took no

---

[3] The petition is considered filed on the date that petitioner deposited it in the prison mail system. See Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (applying the "prison mailbox rule" to petitions for writs of habeas corpus); Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts (2010) ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.").

position on whether equitable tolling should apply. Dkt. #19. Since the government was aware of the timeliness issue and chose not to raise a statute of limitations defense, this court will address the amended February 5, 2007 petition on the merits. See Wood v. Milyard, 132 S. Ct. 1826, 1834-35 (2012) (finding that state waived statute of limitations defense by informing district court it would not challenge, but did not concede, the timeliness of the petition).

**B. Standard of Review**

AEDPA establishes a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id.

at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the state court

to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

## C. Legal Sufficiency of the Evidence Claim

Petitioner's first claim is that the weight of the evidence did not support the verdict of

depraved indifference murder. Pet., Dkt. #10, at ECF 4-5. The Appellate Division rejected this

claim on the merits, finding that the evidence "was legally sufficient to establish the defendant's

guilt beyond a reasonable doubt" and that "the verdict of guilt was not against the weight of the

evidence." Peters, 736 N.Y.S.2d at 270-71.

A challenge to the weight of the evidence, as opposed to the legal sufficiency, is a state

law claim that is not cognizable on federal habeas review. See Correa v. Duncan, 172 F. Supp.

2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim . . .

whereas a legal sufficiency claim is based on federal due process principles."); see also Estelle v.

McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."). Accordingly, this court will only

review the Appellate Division's finding regarding the legal sufficiency of the evidence.

The Due Process Clause of the Fourteenth Amendment "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). To prevail on a claim

based on insufficiency of the evidence, petitioner must show that "upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Policano v. Herbert, 507 F.3d

111, 115-16 (2d Cir. 2007) (federal habeas court must determine whether the state court decision

is "contrary to, or an unreasonable application of, the <u>Winship</u> rule as interpreted by <u>Jackson</u>"). The court must view the evidence in the light most favorable to the government. <u>Jackson</u>, 443 U.S. at 319. "[P]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000).

In considering a claim regarding the legal sufficiency of the evidence, the federal habeas court must determine the elements of the crime by looking to state law. <u>Id.</u> Under the relevant New York statute, a person is guilty of second degree murder if "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). At the time that petitioner's conviction became final in June 2002, New York courts held that in order to support a conviction for depraved indifference murder, the government must show that the defendant acted recklessly in a manner that was "imminently dangerous and presented a very high risk of death to others." <u>People v. Register</u>, 60 N.Y.2d 270, 274 (1983); <u>see</u> <u>Policano v. Herbert</u>, 7 N.Y.3d 588, 595 (2006) (describing <u>Register</u> as the law governing depraved indifference murder in New York until it was overruled in 2006). "[T]he focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by the defendant's reckless conduct." <u>Register</u>, 60 N.Y.2d at 277 (internal citations omitted).

On direct appeal in state court, petitioner offered several reasons why the evidence was insufficient for a verdict of depraved indifference murder. First, he argued that the medical evidence showed that the bullets entered Dunbar's thigh and hip area and that Dunbar initially survived the wounds, so the government did not establish that the gunman's conduct created a

very substantial risk of death. Gov't Ex. 2, Def.'s Br. to the Appellate Div. on Def.'s Direct

Appeal, at 20-21. Second, he argued that the government's sole eyewitness Cooper was not

credible because he had a criminal history, refused to cooperate with police after the shooting,

and gave inconsistent testimony. Id. at 21-23.

Having considered the evidence in the light most favorable to the prosecution, this court

cannot conclude that no rational trier of fact could have found proof of petitioner's guilt beyond

a reasonable doubt. Cooper testified that he saw petitioner shoot Dunbar approximately four

times. Flomenbaum testified that the bullet wounds directly contributed to Dunbar's death,

because one bullet lodged near his heart and caused a blood clot, while the chest tubes inserted

during surgery likely caused pneumonia. If the jury chose to credit Cooper and Flomenbaum's

testimony, it would not be unreasonable for them to find that shooting a person multiple times

creates a very substantial risk of death, regardless of what area of the body the shooter hit or

whether the victim died immediately. See, e.g., Sanchez v. Lee, 508 F. App'x 46, 49 (2d Cir.

2013) (upholding conviction for depraved indifference murder where defendant stabbed victim

in the side, rather than "the heart or another location more likely to cause death"); Mannix v.

Phillips, 619 F.3d 187, 201 (2d Cir. 2010) (finding sufficient evidence to support a conviction for

depraved indifference murder where defendant fired a pistol through a bathroom door); see also

Rivera v. Cuomo, 664 F.3d 20, 21 (2d Cir. 2011) (applying "the utmost deference" to state courts

and juries when reviewing conviction for depraved indifference murder).

Petitioner's argument about Cooper's lack of credibility is similarly unavailing.

Petitioner's trial counsel cross-examined Cooper extensively and devoted the vast majority of his

closing argument to attacking Cooper's credibility. Specifically, defense counsel pointed out

numerous inconsistencies in Cooper's testimony and emphasized his initial unwillingness to

cooperate with police. Trial Tr., June 15, 1998, at 363-89. The jury observed Cooper's testimony

first-hand and heard defense counsel's arguments about his lack of credibility. This court must

defer to the jury's assessment of whether to credit his testimony. See U.S. v. Dozier, 492 F.

App'x 205, 206 (2d Cir. 2012) (habeas court must defer "to the jury's assessment of witness

credibility and its assessment of the weight of the evidence") (quoting U.S. v. Chavez, 549 F.3d

119, 124 (2d Cir. 2008)).

Therefore, the Appellate Division's finding was not contrary to or an unreasonable

application of the Supreme Court's decisions in Winship and Jackson, and petitioner's claim

based on legal insufficiency of the evidence is denied.

**D. Jury Instructions Claim**

Petitioner's second claim is that he was deprived of his due process right to a fair trial

because the court refused to give a particular jury instruction. Pet., Dkt. #10, at ECF 6. At trial,

defense counsel requested an instruction that when evaluating Cooper's identification of

petitioner as the shooter, the jury could consider Cooper's failure to provide information to the

first two police officers who questioned him after the shooting. Trial Tr., June 16, 1998, at 492-

93. The trial court denied this request, finding that the instruction would be "unnecessary" and

that the other instructions "adequately covered the subject." Id. at 493. On direct appeal, the

Appellate Division upheld the ruling, finding that the trial court "correctly conveyed the

elements to be weighted when assessing the accuracy and veracity of the identification

testimony." Peters, 736 N.Y.S.2d at 270.

In order to prevail on a federal habeas claim regarding state court jury instructions,

petitioner must show "not only that the instruction misstated state law but also that the error

violated a right guaranteed to him by federal law." Davis v. Strack, 270 F.3d 111, 123 (2d Cir.

2001). Therefore, the court must determine "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). When assessing the challenged jury instruction in the context of the overall instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). "A petitioner seeking habeas relief based on a trial court's jury charge therefore faces a heavy burden." Cortijo v. Bennett, 422 F. App'x 12, 14 (2d Cir. 2011).

Petitioner cannot meet this high burden. The trial court gave the jury lengthy instructions about how to evaluate Cooper's identification testimony. Trial Tr., June 16, 1998, at 483-88. The trial court instructed the jury to evaluate Cooper's ability to see and remember the person who shot Dunbar, and, in doing so, to consider "the description, if any, of the persons that he gave to the police after the incident." Id. at 486. Therefore, even though the jury charge did not specifically mention Cooper's refusal to cooperate with the police as a factor bearing on his credibility, the charge still directed jurors' attention to his interactions with the police. Furthermore, the jury had heard about Cooper's lack of cooperation with the police during Cooper's testimony and during defense counsel's closing argument. Therefore, considering the jury charge as a whole, the failure to include the requested instruction did not undermine the fundamental fairness of the trial, and petitioner is not entitled to habeas relief on this claim.

## E. Ineffective Assistance of Counsel Claim

Petitioner's third claim is that he was deprived of effective assistance of counsel in his second state court trial. He argues that counsel failed to call a material eyewitness with direct

evidence of petitioner's innocence and whose exculpatory testimony had previously led to a mistrial. Pet., Dkt. #10, at ECF 7-8.

To establish a violation of the Sixth Amendment right to effective assistance of counsel, petitioner must meet the two-prong test established by Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted). Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 698. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792.

When ineffective assistance of counsel claims are presented on collateral habeas review, the court assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam)); see 28 U.S.C. § 2254(d). In order to prevail, petitioner must show not only that counsel's performance fell below the Strickland standard of reasonableness, but also that the state court's adjudication of the Strickland standard was itself unreasonable and not merely incorrect. See Harrington, 131 S. Ct. at 785.

Petitioner argues that counsel at his second trial was ineffective for failing to call Rasheen Smith as a witness. At petitioner's first trial, Smith testified as a government witness.

He testified that he was at the basketball court when he saw a person nicknamed Fern shoot

Dunbar, but he testified that petitioner was not Fern. Gov't Ex. 6, Trial Tr., Feb. 26, 1998, at

475-76. After follow-up questioning by the prosecutor, Smith stated that he was "frightened" to

testify in court. Id. at 476. But after further questioning, he stated that he was "not scared" of

petitioner. Id. at 480. In his post-conviction motion, petitioner argued that Smith's testimony led

to a mistrial at his first trial, and that at his second trial, when he was represented by different

counsel, his counsel should have called Smith to rebut Cooper's eyewitness testimony. Gov't Ex.

4, Def.'s June 2003 Mot. to Vacate J. of Conviction. Petitioner stated that counsel refused to call

Smith as a witness at the second trial despite petitioner's "constant and persistent . . . urging"

because counsel said it "would be of no great use." Id. Petitioner included an affidavit from

Smith stating that he witnessed Dunbar's shooting and that petitioner was not the shooter. Id.

Smith stated that Dunbar's family approached him and said that if he helped to secure a

conviction at petitioner's first trial, he would be "taken care of." Id. He stated that he agreed to

appear as a government witness and was going to testify falsely against petitioner, but then

changed his mind because he "did not wish to participate in having an innocent man convicted."

Id. Smith stated he would have been willing to testify in a subsequent proceeding. Id. Petitioner

argued that Smith's testimony would have been helpful both because he would have testified that

petitioner was not the shooter, and because it would have raised the question of whether someone

had similarly approached Cooper to ask him to falsely implicate petitioner. Id.

The Kings County Supreme Court denied the claim of ineffective assistance of counsel,

finding that counsel at petitioner's second trial may have had "strategic or other legitimate

reasons" for deciding not to call Smith as a witness. Gov't Ex. 7. The Appellate Division granted

leave to appeal, appointed counsel to represent petitioner, and affirmed the denial of the motion.

15

Peters, 812 N.Y.S.2d at 372. Both state court decisions fail to explain what counsel's strategic reasons might have been, and the state courts never conducted a hearing or required an affidavit from trial counsel to inquire about his strategy.

However, based on a review of the record and applying the doubly deferential standard, this court cannot find that the state court unreasonably adjudicated petitioner's Strickland claim. The decision of whether to call a particular witness is the type of strategic choice that courts must be particularly hesitant to second-guess. See Strickland, 466 U.S. at 689 (petitioner must overcome "presumption that...the challenged action might be considered sound trial strategy") (internal quotation marks and citation omitted); Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) ("Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury."); United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.") (internal quotation marks and citation omitted). This court must evaluate trial counsel's decision from his perspective at the time and "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.

The record shows that Smith's testimony at the first trial was not as clearly exculpatory as petitioner claims. Smith did deny that petitioner was the person who shot Dunbar, but he also stated that he was frightened to testify. The prosecutor accused him in open court of lying on the stand, asked him why he was scared of petitioner, and implied that Smith had changed his story after an encounter with one of petitioner's friends the night before. Gov't Ex. 6, Trial Tr., Feb. 26, 1998, at 476-79. Viewed from counsel's perspective at the time of the second trial, there could be strategic reasons not to call a witness who raised serious credibility concerns, showed a

willingness to give unexpected testimony when placed on the stand, and could have been impeached with his prior testimony. Furthermore, calling Smith as a witness could have undermined counsel's overall strategy of discrediting Cooper, the government's eyewitness. Even though Smith denied that petitioner shot Dunbar, his testimony corroborated Cooper in part, since his description of the shooter's appearance and nickname matched Cooper's testimony. Therefore, counsel could have concluded that Smith's testimony would be more harmful than helpful to his strategy. Because I find that the state court could reasonably conclude counsel was not deficient, I need not reach the second prong of the Strickland test and assess whether any alleged errors by counsel prejudiced petitioner. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

Petitioner also argues that the state court denied him due process by summarily denying his ineffective assistance of counsel claim without a hearing. Pet., Dkt. #10, at ECF 7. However, claims regarding errors in state post-conviction proceedings are not cognizable on federal habeas review. Word v. Lord, 648 F.3d 129, 132 (2d Cir. 2011) (holding that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief"). Therefore, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because petitioner has failed to make

a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court

declines to issue a certificate of appealability. The Clerk of Court is directed to enter judgment

accordingly.

SO ORDERED.

/S/ Judge Allyne R. Ross
_____
Allyne R. Ross
United States District Judge

Dated:      November 13, 2013
              Brooklyn, New York

SERVICE LIST:

**Petitioner:**
**Clifford Peters**
# 98-A-4308
Attica Correctional Facility
639 Exchange Street
Auburn, NY 14011-0149